I'll be submitted and the third case that was going to be orally argued and that is U.S. v. Delgado-Montoya. Council, if you can give me just one minute. And we'll hear from Mr. Rubin. May it please the court, Daniel Rubin on behalf of Mr. Delgado-Montoya. The dispute is whether the guideline 1B.1.13 is applicable when an inmate brings a motion as opposed to the BOP. Mr. Delgado urges this court to agree with at least four other circuits that have already decided this issue. The second, fourth, sixth, and seventh circuits all have held that 1B.1.13 of the guidelines is not an applicable policy statement when a defendant, rather than the BOP, files for a sentence reduction under 35A.2.C.1.A. Can I challenge you on whether that the issue that we have here is precisely the same as in those circuits? One of the interesting aspects of this case is that the medical condition of the defendant and the risk of an outbreak of COVID and one's susceptibility to escalated medical conditions is one of the components in comment 1 to 1B.1.13. And so there's no question that that could be extraordinarily compelling reasons for compassionate release. And so what is wrong with Judge Gonzalez saying, okay, I'm not going beyond the three enumerated circumstances. I'm looking specifically at one of the tests, one of the components that is unquestionably appropriate to be considered for that is in comment 1 to 1B.1.13. What's wrong with that? Your Honor, because it restricts Judge Gonzalez to a very specific and limited medical condition argument, which is, one, is the person suffering from a terminal illness, or two, is the person suffering from something that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility. It's very limited. We have seen compassionate release motions be granted for folks with medical conditions that don't fit squarely into that limited application note 1A medical condition. So had Judge Gonzalez performed his analysis within the right framework, he could have found that Mr. Delgado, just based on his medical conditions, his physiological age, that there were extraordinary and compelling reasons that didn't fit squarely into 1B.1.13. And again, I think that's what the circuit courts have determined. In Brooker, the Second Circuit stated that it is manifest that the language of 1B.1.13 is clearly outdated and cannot be fully applicable, and concluding that the guideline survives but now applies only to those motions the BOP has made. In Jones, the Sixth Circuit determined the first sentence of 1B.1.13 predicates the entire policy statement on the director of the BOP's filing a motion for compassionate release. In McCoy, the Fourth Circuit stated by its plain terms, in short, 1B.1.13 does not apply to the defendant motions under 3582C1A. And then finally, in Gunn, the Seventh Circuit determined section 1B.1.13 addresses motions and determinations of the director, not motions by prisoners. So the prevailing legal view is correct. The plain and unambiguous text of 1B.1.13 establishes that it is not applicable to defendant file motions. In Gunn, you mentioned Gunn. Also in Gunn, didn't the Seventh Circuit also specifically say that even though 1B.1.13 is not applicable, that the comment to 1B.1.13 provides a workable standard for constraining the district court's discretion? It does, Your Honor. That's my reading of Gunn as well. I think a judge can certainly take factors in 1B.1.13 into account, but I think the judge also has to recognize the correct framework that he or she is allowed to decide under, which is completely, in our view, independent of 1B.1.13. And, Your Honors, in turning to the memorandum and order of Judge Gonzalez, when considering whether Mr. Delgado Montoya had demonstrated extraordinary and compelling reasons for a reduction in sentence, the district court looked only to the definition in the application note to 1B.1.13 and did not exercise any independent discretion and authority, which it was completely allowed to do. And throughout that memorandum and order doesn't even reference that he is allowed to do that. There's five references in a nine-page order to 1B.1.13, and as an example, as you briefly mentioned, Judge, earlier, in terms of medical condition, it then quotes 1B.1.13. Had the court understood it was not limited to 1B.1.3, it could have found that Mr. Delgado Montoya's progress, combined with his physiological advanced age as well as his daughter's predicament could have reached, in addition, an argument that we made that Judge Gonzalez did not speak to, which was a prior conviction that increased his offense level by 16 offense level points. All of that could have been combined or separated, but Judge Gonzalez had the power within the proper framework to find extraordinary and compelling circumstances. And had he not, I mean, if he had just acknowledged what the proper framework was, he could have certainly done that, that it just didn't meet the standard. I would say, and then going through 1B.1.13, getting back to, you know, the limitations and how strict it is, again, it's got BOP language riddled throughout, so it's clear that it's made for motions based on the BOP, but it talks about medical conditions, and it's very strict, the criteria. And we've seen- Do you agree that whether or not 1B.1.13 applies, we do have the limitation, this is not like the ordinary case, we do have a limitation that the defendant has to show extraordinary and compelling situation, right? Yes. Avoid that in any event. No. So if we were to look at this and say, yeah, these points about his progress in his rehabilitation and the fact that California case was discharged and so forth might make a difference if this came up in a normal sentencing situation, but when we're talking about this context of extraordinary and compelling circumstances, these don't meet that. Whether or not you make reference to USSG 1B.1.13, if we don't think it's even close that these arguments he makes would satisfy compelling and extraordinary circumstances, do we need to decide whether that regulation is applicable or not? I think that this has to be remanded for Judge Gonzales at least to acknowledge the correct framework from which he needs to make a decision. If we were to say if Judge Gonzales on the arguments that were made by us, to us, aren't compelling and extraordinary, would a remand be necessary? Because if Gonzales had said, yes, they are, we would then have to consider reversing. I guess we're talking about whether this is harmless error. And I would suggest to you that the way 1B.1.13 works and it was applied by the district court is it's very narrow. And when we bring all these factors out of a total of, let's say, five in terms of age, in terms of its daughter that needs assistance, in terms of prior conviction being remanded. But when we take all these factors together, I think those could be extraordinary and compelling within the proper framework. So I think that I don't think there's enough information from the memorandum in order to when viewed under what the other circuit courts have determined is within the full discretion of the district court judge. And not limited to 1B.1. Information. What information, what facts are missing? I thought we had all the facts. And we know exactly what this defendant is arguing. He's spelled it out in very great detail. If this were a bigger case where the defendant says, I want to make a lot of arguments and I haven't got them all figured out yet, that might be one thing. But here, he's telling us exactly what he wants to argue. I guess here's my analogy as a simple answer. And I'm not great at analogies. He has pushed these factors inside a small square. If that square became a larger circle, that might allow these factors to get to extraordinary and compelling, even by Judge Gonzalez. He has limited his analysis to a very small box. And he may very well decide, actually, these are extraordinary and compelling because I can look at this, I can combine these factors. I wonder if your stronger argument would be, maybe, Judge, you're right, that these don't satisfy the extraordinary and compelling. But it's really, really close. And if we could get the district judge to agree, we'd have an additional arrow in our quiver we don't have now, which means we would have the presumption of correctness from the district judge's decision. Judge, that makes a lot of sense. And I would take my cue that that is a very strong argument. I would also suggest that, as a practitioner who has filed several compassionate release motions, what Judge Gonzalez, in his order, attempts to strike down, or does strike down, in the limited box, I have seen compassionate release granted for these types of factors. So I don't think it is a long shot that, viewed in the proper framework, and if it was remanded, that there is sufficient evidence for Mr. Delgado that he does have extraordinary power. That talk about opening the door, that opens the door. I need to have you tell me, or cite to me, cite to our court, not to me, cite to our court, cases under similar facts as these argued that have been held as extraordinary circumstances. So could you do that? Yes, Your Honor. I had a, not the same facts, Judge. I had a younger man who was a smoker and obese. He was mid-30s. And the other district court judge here, Judge Brack, granted compassionate release based on COVID and his risk of catching COVID. He didn't have any family obligations, and he, such as Mr. Delgado had, but he had potentially catastrophic health issues. That's sufficient. I just noticed your time is dripping away. I'm satisfied with your answer. You go ahead with your own plan. I do want to follow up, and I'll give you another minute or so. But your answer to Judge Avella a minute ago surprised me somewhat, that your argument, as I understood what you were saying, is that there are all of these other factors, family circumstances, because in your reply brief, I thought you had responded to Ms. Walter's argument where she pointed out that in the very sentence that follows the one that you're that interpreting family circumstances, the guidelines are advisory. And I thought in your reply brief, you specifically responded to her argument and saying, I'm not, I, Ms. Rubin, am not arguing that family circumstances are an extraordinary compelling reason. I am only arguing the medical condition. I had mentioned family circumstances only because once I showed that there are extraordinary compelling reasons for compassionate release, I would have to show the factors under 3553A for resentencing. And so I thought your reply brief told me that for compelling and extraordinary compelling reasons, you were relying solely on medical condition. Am I wrong about that? Yes. I know the reference to the family. I think what we are arguing, what I was arguing in the reply brief is that perhaps the family situation in Mexico where there's a mother-in-law and a young daughter, perhaps that alone is not extraordinary and compelling. But yes, our argument remains that that combined with other factors, we think it certainly gets to extraordinary and compelling. And that's why we'd like for this to be remanded. I hope that answers your question. It does. I would like to reserve the remainder of my time for rebuttal, please. Okay, that's fine. And Paul, I gave Mr. Rubin an extra minute. So let's give Ms. Walters an extra minute also, just to be fair. Will do, Judge. Thank you, Paul. Ms. Walters? Thank you, Your Honor. May it please the Court, Counsel Tiffany Walters for the United States. Mr. Delgado contends that the district court's denial of his motion for compassionate release must be reversed for a single reason, that the district court erred in finding that section 1B1.13 of the sentencing guidelines was binding. While the United States disagrees with Mr. Delgado Montoya's position on this issue, the court need not reach this ultimate point because the district court did not commit the error that Mr. Delgado Montoya alleges. In the case here, the district court specifically said that the sentencing guidelines were advisory. And that was in the context of Mr. Delgado Montoya's argument that he made to the district court. Mr. Delgado Montoya put forward this argument that the sentencing guidelines are not binding. And against that backdrop, the district court makes a statement that the sentencing guidelines are advisory. And what Judge Gonzalez said about that, and obviously in Booker, for example, you know, that's what we often think and are told. In this context, it really doesn't make any sense to me to say that the advisory guidelines are, I mean, that the guidelines are advisory because they're either, because under the 3582C, First Step Act, an applicable policy statement from BOP is either binding, is either applicable or it's not. If it's applicable, it's binding. It's not advisory, it's binding. And if it's not applicable, it's not advisory or anything. So I'm not really sure why Judge Gonzalez thought that it was advisory in this context. Even looking at that term, at a minimum, the sentencing guidelines would be persuasive, even if not applicable. And the district court didn't abuse its discretion in citing the guidelines that have applied to BOP motions all along and applying them in this case. This court, following the First Step Act, has continued to refer- But how do we know that the district court didn't consider them binding in the sense that he referred over and over again to U.S. Guideline 1B1.13? Because we have that language that says that the district court's finding that they're advisory. And whether or not advisory is the correct term, it's certainly almost the opposite of binding. It specifically rejects that, particularly against the backdrop of Mr. Delgado Montoya's  And here, Mr. Delgado Montoya is arguing that perhaps that if the district court could look beyond this box that is the policy statement, that he could establish extraordinary or compelling circumstances. The difficulty here, as this court has pointed out, is that the circumstances or the reasons provided by Mr. Delgado Montoya actually fit within the box of the policy statements in this case. Mr. Delgado Montoya is raising an argument that we've seen time and time again in the time of COVID, that he is at substantially higher risk of complications or death from COVID. And the district court considered all the grounds that he raised in his motion for compassionate release. It considered whether or not his high cholesterol at the age of 59 made him at high risk. It also considered whether or not there'd been a substantial outbreak in the facility and found that there'd been only two cases in the facility. And against that backdrop, there wouldn't have been any difference, regardless of whether the policy statement was binding or not binding, because the district court considered all the factors raised and found that they weren't sufficiently extraordinary and compelling to give rise to release under the compassionate release statute. The problem is that, or let me ask you this way, Ms. Walters. I don't think that there's any question in my mind, at least, that you're right in this sense, that Judge Gonzalez did mention the fact that there were only two COVID instances at Reeves downplayed the significance of the outbreak. And yet, and so he did, when you're arguing harmlessness, I think you were on strong ground, Mr. Rubin can correct me later in his rebuttal if I'm wrong about this, that Judge Gonzalez considered them. The problem is he considered those against a very specific test that was articulated in comment one, a comment that corresponds to a policy statement that we are hypothesizing under these other circuits decisions is totally inapplicable. And he specifically said on page seven, however, to find quote, extraordinary compelling reasons for a sentence reduction based on medical conditions, the defendant must be quote, suffering from a terminal illness. And he goes on to quote, to apply as if it is not advisory, but the definitive binding test that was drawn from comment one. Well, that is certainly not a binding test if it corresponds to a policy statement that is inapplicable. Even though the box itself, it's the test that Mr. Rubin is criticizing. And that seems a legitimate criticism. Even if the court was applying a narrower standard that may have applied under the statute, frequently when you see district court judges struggling with this idea that I'd like to individual to a particular sentence, but I feel bound by a statutory minimum. And you'll see statements in the district court's decisions in those cases where you can see that the court is struggling with that tension. I would like to go beyond this because I feel in this case there are statutory, extraordinary and compelling reasons. But in fact, I'm bound by these guidelines and I'm restricted and I can't do what I would feel most comfortable doing. We don't see any indication in this court's decision that Judge Gonzalez was having any of that internal struggle. What we see is that Judge Gonzalez is at least expressing that he doesn't feel completely cabinet. He feels that these guidelines are advisory and there's nothing to suggest that 1C would be advisory or less binding, but 1A would not be. He's considering the one source of guidance that we do have in this case, which is the guidance the Sentencing Commission has these facts, we have extraordinary compelling reasons. So given the decision in this particular case, I don't think we have that tension between whether or not the court would have found it under the statute versus the policy statement. Because here we see that the district court was really deciding it on the facts of this case and seeing that not only are the susceptibility of COVID insufficient to constitute extraordinary and compelling reasons, but also the court went beyond what the defendant asked and considered everything in the motion. Considered the evidence of rehabilitation, considered the family circumstances, considered anything that was before it and found that none of these rose to the level of extraordinary and compelling circumstances based on the facts. And these are facts that defendant hasn't challenged and the defendant hasn't argued that the judge abused its discretion beyond this question of whether or not the court was bound by the guidelines in this case. Regardless of whether or not that advisory label was the correct label, it certainly doesn't reflect that the district court felt limited and there's nothing else in the district court's decision that shows that it felt limited. And the citation and the reference to the policy statement alone could not be an abuse of discretion or error. This is the same policy statement that this court has continued to refer to after the First Step Act and referred to it even if the court hasn't reached the question of whether or not it's applicable. So the court certainly didn't err by citing the piece of persuasive authority that it did have in this case. The district court here considered all of the grounds that Mr. Delgado Montoya raised. This isn't a case where we have, you know, an unusually long sentence or some other ground that falls outside of the three boxes that we have in the policy statement. This is a case that falls squarely within those boxes and so for those reasons it really ultimately doesn't make a difference whether or not the policy statement is binding or advisory or simply just persuasive in this case because the district court considered everything that was in front of it and based on that found no basis to grant compassionate release. I'm going to take it the district court did not reject any argument made by Mr. Delgado Montoya on the grounds it fell outside of his authority of consideration. Correct. If we thought that the district court, if the district court thought that it was bound you would expect to see something along the lines of a decision not declining to consider a specific ground or some indication that it was out of bounds for the court. Or looking at it just from a prejudice point of view, if the defendant got every single argument that he's advancing below and on appeal before the court and the court considered it, then do we need to decide in this case whether this is binding or advisory or otherwise? The court does not need to decide that in this case turns on the fact that first the district court didn't find that itself was bound and then because of that appellant hasn't shown that the only error he alleged actually occurred in the case and even if it did it doesn't matter because under the facts of this case, the reasons raised by the defendant fit within the boxes of the policy statement so it doesn't make a difference whether or not it was binding or merely persuasive because ultimately the court considered the facts in this case and there's no challenge to factual findings. There's no indication that anything would have turned out any way differently and the question ultimately of whether or not the policy statement is binding or persuasive or what role it plays, it's a complicated question. Clearly it's split district courts. Other circuits have weighed in on this question. It is an important question and it should be decided in a case that actually presents it squarely. This court has in front of the case United States v. Mau Mau which is docket number 20-4056. That case squarely presents this issue and it cannot be avoided in that case. It's been fully briefed and fully argued and the government would respectfully submit that a case like that where the issue is squarely before the court presents a better vehicle to decide this case than it than a case such as this where it's really unclear. Well, there's just no indication that the fact that it was binding versus persuasive makes any difference at all in the case because the reasons fall squarely within the policy statement and there's just no challenge to the district court's ultimate factual findings or abuse of discretion that the defendant's age of 59 and high cholesterol were sufficient to grant his release even and combined with the family circumstances in which the district court found that he had not shown that his mother-in-law could not care for his daughter or that there was not anyone else available who could assist with that. For all these reasons, because this case does not turn on the question of whether or not the policy statement is binding, the United States would respectfully submit that the court should affirm for the reasons provided by the district court simply because the district court did not commit the error of finding that the policy statement is in fact binding. Thank you, your honors. Sorry, we'll hear from Mr. Rubin. Thank you. So the government does pick up on the small reference where Judge Gonzalez mentions the guidelines or advisory to suggest that he did not determine or make his decision within the limited context of 1B1.13. I think it's very clear from his memorandum in order that he made his decision fully within 1B1.13. I think reading that order, it's apparent. The government also suggests that nothing is of 1B1.13, so really it was harmless error. Well, we do think two things. One, the conviction that was vacated that then would not increase his guidelines by 16 levels, that's extraordinary to Mr. Delgado. We do think it's extraordinary. I don't think the judge discussed that in his memorandum in order. But you haven't argued that to us, have you? I mean, until what you just said. Oh, no. I believe the 16-level enhancement in the vacated conviction is in our briefing, Judge. Is it an extraordinary and compelling reason? Yes, yes, yes, yes. A vacated 16-level offense conviction, I think that does raise eyebrows and suggests maybe it's time to consider compassionate release based on multiple grounds, including but not limited to that. Also, Judge Gonzales. You're saying that that is something that was not considered by the court. The court does not speak to it. And that would not have been allowed under the guideline 1B1.13, so that is at least one evidence of potential prejudice here. That is correct. And I've gone over time. But you had another one, I thought. I wonder, Judge Becker, could we give you another time? Tell us any others that I'm interested in that. Sure. That was not mentioned in the memorandum in order. Also, rehabilitation was praised by Judge Gonzales, but he stuck to 1B1.13, saying that alone is not enough. So I think what we're arguing, why this is potentially extraordinary, putting everything together, I think we need to send this back and remand it to Judge Gonzales to figure out under the proper framework, one or more together is that extraordinary and compelling. Thank you, judges. All right. Thank you. Judge Abell or Judge I, did you have any additional questions? No. No. All right. Thank you, Ms. Rubin and Ms. Walters. It was very well presented in your briefs and in your arguments today. So this matter will be submitted. We'll take about a 15 minute poll. Are you going to come back on? We're going to take about a 15 minute recess.